UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA CASSELLA

                Plaintiff,                CASE No.: 2:21-cv-10772

v                                                      HON.

DELTA AIRLINES, INC,
SKYWEST, INC, and d/b/a SKYWEST,
and PROSPECT AIRPORT SERVICES, INC.    JURY TRIAL DEMANDED

                Defendants.
_____/

Thomas J. Wuori     (P41096)
Blake K. Ringsmuth  (P44013)
RINGSMUTHWUORI PLLC
Attorneys for Plaintiff
102 W. Front Street, Ste. 401
Traverse City, MI 49684
(231) 929-4700
(231) 929-4702 (Fax)
tom@rwinjurylaw.com
blake@rwinjurylaw.com
kate@rwinjurylaw.com

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, THERESA CASSELLA, by and through her attorneys, RingsmuthWuori, PLLC, and for her Complaint and Jury Demand against Defendants, DELTA AIRLINES, INC. ("DELTA"), SKYWEST, INC., and d/b/a SKYWEST AIRLINES ("SKYWEST"), and PROSPECT AIRPORT SERVICES, INC. ("PROSPECT") states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is a citizen and resident of Albany, New York.

2. Defendant DELTA is a Delaware corporation with its principal place of business in Atlanta, Georgia.

3. Defendant SKYWEST is the is the holding company for SkyWest Airlines, a regional airline company that provides airline transportation separately and through its association with companies such as Delta, and is a Utah corporation with its principal place of business also in Utah.

4. Defendant PROSPECT is incorporated in Illinois and with its principal place of business in Illinois, and is a company providing airline services such as wheelchair assistance for and on behalf of airlines and their passengers.

5. Jurisdiction is proper in this court due to diversity jurisdiction and 28 U.S. Code § 1332.

6. Venue is proper in this court because the cause of action and injuries to the Plaintiff arose when she was to be provided a wheelchair and assistance when leaving a plane at Detroit Metropolitan Airport on the jet bridge as part of a ticketed trip from Albany, New York to Indianapolis, Indiana.

7. The amount in controversy is above the jurisdictional limit for this Court ($75,000.00) based upon the nature of the harms and losses to the Plaintiff as outlined further throughout this Complaint.

## GENERAL FACTUAL ALLEGATIONS

8. Plaintiff incorporates by reference the allegations set forth in paragraph 1 through 7 above, and all subsequent allegations, as if fully set forth herein.

9. Theresa Casella is the Plaintiff and was 80-years-old at the time she was traveling from Albany, New York to Indianapolis, Indiana as part of a four-leg trip ticketed through Defendant Delta Airlines and/or SkyWest Airlines starting on May 4, 2018.

10. Defendants DELTA and SKYWEST are common carriers and in the business of transporting passengers from various destinations through airports, hubs, and areas over which they have control and operational authority, including the safe transportation of passengers, and including those requesting and needing assistance whether due to age, infirmities, disabilities, or physical limitations or needs (mobility for example).

11. Defendants DELTA and SKYWEST also contract for and arrange for physical assistance for passengers throughout various legs of their common carrier trips and as part of the ticketing process with their passengers, including embarking and disembarking such flights and throughout airports and facilities.

12. Upon information and belief, Defendant PROSPECT either did or should have also provided the wheelchair and/or assistance services to or for Delta and/or SkyWest and for Flight 4616.

13. Upon information and belief, Defendant PROSPECT either had provided or was sending an employee for wheelchair assistance services for this flight and/or for the benefit of the Plaintiff as requested and arranged by Plaintiff's son.

14. Plaintiff was a ticketed passenger for Delta Flight 4616, made and paid for her and on her behalf by her son, Nick, which included him using his status as part of Defendant's Diamond Club to arrange for specialized wheelchair assistance and service for Plaintiff because of her age and limited mobility, as he has done for her in the past.

15. According to the ticketing documents (trip confirmation G2WUTS), the Delta 4616 Flight was operated by SkyWest d/b/a Delta (connection) (seat 19C) with ticket number 0062320857981, issued through Delta.com.

16. The Defendants knew, or reasonably should have known, of the need for Plaintiff to have wheelchair assistance to embark and disembark from the aircraft.

17. One of the layovers for Delta Flight 4616 on May 4, 2018 was in Detroit, MI at the Detroit Metropolitan Wayne County Airport, with the ticket/ boarding pass documenting "wheelchair requested."

18. The special assistance to be provided by Delta, and as requested and arranged by Plaintiff's son, was for all four legs of the trip and included immediate wheelchair assistance on the jet bridge when exiting the aircraft.

19. Plaintiff exited Flight 4616 in order with other passengers and stepped onto the jet bridge in Detroit.

20. Plaintiff, as she has done in past trips, stepped from the aircraft into the cabin of the jet bridge and was just outside of the plane's exist door expecting to be met with a wheelchair and wheelchair assistance.

21. There were other passengers still deplaning and while a wheelchair was in the area there was no one there to assist her.

22. Plaintiff asked a nearby Delta/ SkyWest employee if someone was there to assist her with her arranged-for wheelchair needs.

23. Nobody was there present to assist her and after about a five-minute wait standing on the jet bridge, Plaintiff told the Delta/ SkyWest employee that she could not stand much longer.

24. The Defendant's employee did not offer the Plaintiff any assistance, provide any guidance or instructions, other than confirm that an unmanned wheelchair that was on the jet bridge was for her or could be used by her.

25. The Plaintiff, having waited and telling the Delta/ SkyWest employee that she could not stand unassisted much longer, eventually asked the Delta/ SkyWest employee if she could sit down in the wheelchair.

26. The Delta/ SkyWest employee offered no assistance or guidance and only replied that someone would be coming at some point.

27. The Delta/ SkyWest employee did not assist the Plaintiff either in providing or using the wheelchair despite knowing of Plaintiff's age and Plaintiff's verbal statement that she would not be able to stand alone and unassisted much longer.

28. The Plaintiff then tried by herself to sit in the unmanned wheelchair as directed and while doing so the unsecured, unstable, and unmanned wheelchair and Plaintiff fell backwards with her back and hip areas striking the floor of the jet bridge.

29. The Plaintiff may have been knocked out or unconscious and does not remember everything post-fall.

30. The Delta/ SkyWest employee did not see Plaintiff fall and only turned around after she fell to see Plaintiff on the ground.

31. Plaintiff lay on the floor in severe pain with passengers continuing to exit around her and no airline personnel offering any assistance other than to tell other passengers not to assist her as someone had called for an ambulance or medical assistance.

32. Plaintiff was taken by paramedics in an ambulance to Oakwood Annapolis Hospital in Michigan for six days, where she was diagnosed with and treated for acute displaced intertrochanteric fracture of the left femur, which diagnosis included a closed left hip fracture.

## COUNT I - NEGLIGENCE

33. Plaintiff incorporates by reference the allegations set forth in paragraph 1 through 32 above, and all subsequent allegations, as if fully set forth herein.

34. As common carriers, Defendants DELTA and SKYWEST owed the Plaintiff a high duty of care to provide for the safety and care for its passengers.

35. As common carriers and based upon the arrangements for and notice to Defendants DELTA and SKYWEST about the need for wheelchair service, Defendants owed Plaintiff duties of care that included service and assistance in deplaning and in obtaining, providing, and using a wheelchair, which included (a) providing a safe and secure wheelchair and (b) assistance in embarking and disembarking the plane and assistance entering into and exiting from a wheelchair.

36. Defendant PROSPECT also owed duties of reasonable care to provide for the safety and care for airline passengers.

37. Defendant PROSPECT has the same duties and obligations as the Defendants DELTA and SKYWEST to airline passengers.

38. All Defendants were on notice of their duties to provide assistance to persons with disabilities and those who requested and for whom arrangements were made for wheelchair assistance, including specifically the Plaintiff.

39. Plaintiff relied upon the wheelchair assistance arranged for by her son and with all Defendants.

40. All Defendants have a duty to provide training for all employees regarding wheelchair assistance and help for the disabled and those employees dealing with the traveling public.

41. All Defendants are responsible for these wheelchair and assistance services and for any companies or agents it hires or arranges for to provide wheelchair assistance.

42. All Defendants owed Plaintiff and the traveling public a duty to provide safe and reliable and reasonable wheelchair service, which included prompt and safe assistance into and out of the wheelchair.

43. Plaintiff expressed a need for assistance when she was standing in the jet bridge and later expressed a more urgent need for assistance when she told the Delta/ SkyWest employee she could not continue standing without such assistance.

44. Plaintiff relied upon the Defendants to provide such service and relied upon, to her detriment, the actions and comment of the Delta/ SkyWest employee that led to her fall and injuries.

45. All Defendants must provide timely and safe wheelchair assistance to prevent foreseeable falls and protect vulnerable passengers from harm.

46. All Defendants must promptly provide assistance for a passenger with a disability in getting on and off a plane.

47. All Defendants must provide a safe and secure wheelchair and assistance for such passengers to prevent falls and protect vulnerable passengers from harm.

48. Safety should be the first priority with a disabled passenger needing wheelchair assistance.

49. All Defendants should make sure to provide safe, prompt, and adequate assistance for wheelchair passengers.

50. About 36 million older adults fall each year in the United States, with falls being the leading cause of injury and death for the older population.

51. Previously, and during the first part of her trip, the Plaintiff had had someone from Delta meet her and provide a wheelchair and assistance in getting into and out of the wheelchair.

52. Plaintiff specifically told the Delta/ SkyWest employee on the Detroit jet bridge that she needed assistance, that she would not be able to stand there without wheelchair assistance for long, and that after waiting further she had to sit down.

53. Plaintiff put her purse/book bag on the arm of the wheelchair for safety reasons and tried to get into the wheelchair herself, when she was unable to do so and fell because Defendants provided no assistance or instructions.

54. Defendants DELTA and/or SKYWEST operated as a common carrier and as such this common carrier-passenger relationship created a duty on Defendants to exercise the highest standard of due care of a reasonably prudent common carrier.

55. All Defendants owed duties and the degree of skill and care a reasonable carrier would use under similar circumstances.

56. Previously, on prior flights and the earlier parts of this particular flight, the Defendants provided a wheelchair and a person to assist and aid Plaintiff, which was not provided to the Plaintiff in Detroit; further, when she explicitly told the Delta employee, she really needed assistance and could not stand much longer on her own, the Delta/ SkyWest employee just directed her to sit down in the wheelchair on her own.

57. All Defendants were on notice of a heightened need for and the standard of care required to assist passengers such as Plaintiff and of the known and foreseeable risks involved for such passengers if such instruction and assistance and a safe wheelchair care are not provided.

58. Such duties of Defendants include the duty to exercise such diligence as would be exercised in these circumstances by a reasonably prudent carrier, including providing not just a wheelchair but a safe and secure wheelchair and assistance for the use of the wheelchair and assistance getting into and out of the wheelchair, including after Plaintiff told the Delta/ SkyWest employee that she could not stand on her own much longer by herself.

59. Because of the special relationship between Defendants and this passenger, and because of the wheelchair assistance required of Defendants offered by them and relied upon by Plaintiff, Defendants owed a duty of special care to protect its passengers, with the plane, jet bridge, and wheelchair in the possession and control of Defendants.

60. All Defendants were on notice of their obligations of due care and duty for wheelchair safety and protection under law.

61. All Defendants were also on notice of and responsible to ensure that any contractors or entities who were to provide such arranged-for wheelchair services also comply with all due care and safety for wheelchair arrangements and safety services for needy passengers, including the Plaintiff.

62. All Defendants breached their respective duties outlined above.

63. All Defendants violated their duties of care and did not exercise such diligence and care as would be expected of a common carrier in these circumstances

64. All Defendants breached their respective duties to Plaintiff and as a proximate cause and result caused serious and permanent physical, economic and non-economic damages to her, including:

    a. Hospitalizations and surgery;

    b. Rehabilitation and convalescence needs at a rehabilitation center;

    c. Still needing assistance with daily living needs;

    d. Missing events such as graduation of grandson from medical school;

    e. Permanent harms and losses;

    f. Open reduction and internal fixation procedure on her left hip, including placement of a guide wire through her femur and femoral neck and into the femoral head, with placement of screws and plates

    g. Occupational and physical therapy;

    h. Pain and suffering

    i. Embarrassment and humiliation;

    j. Loss of qualify of life;

    k. Permanent losses and changes to her abilities from before the fall;

    l. Inability to travel home and an extended stay in Michigan for rehabilitation needs;

    m. Complications from her injuries and treatments, including pneumonia concerns and intestinal obstructions

    n. Extensive assistance in activities of daily living, including basic task such as basic hygiene needs and getting in and out of bed and ambulating difficulties;

    o. Difficulty in weight bearing and walking and needing a wheelchair and other assistance devices such as a walker;

    p. Impaired balance;

    q. Need for a colostomy bag;

    r. Increased swelling and other complications, included elevated heart rate and decreased motion in lower extremities;

    s. Colonic ileum and further hospitalization;

t.  Fatigue and other complications associated with the fall injuries, treatments, and foreseeable and predictable sequalae from such an injury to Plaintiff;

u.  Decreased socialization and mobility compared to what Plaintiff was doing and able to do before the fall;

v.  Depression related to the fall, injuries, treatments, and limitations;

w.  Sleep disturbances;

x.  Loss of independence and mobility;

y.  Isolation;

z.  Permanent need for a walker;

aa. Changes to her pre-fall life, including no longer being able to drive as she did pre-fall to travel to visit family and friends, and ongoing needs for daily assistance with basic tasks (housekeeping, laundry, shopping, cleaning, cooking);

bb. Other emotional harms and losses and fears; and

cc. Other damages, harms and losses, allowed under Michigan law and its jury instructions, and as developed through discovery.

WHEREFORE, Plaintiff THERESA CASSELLA requests that this court enter Judgment against the Defendants in whatever amount Plaintiff is found to be entitled, together with costs, interests, and attorney fees as provided by law.

RINGSMUTHWUORI, PLLC

Dated: April 5, 2021

By:_____
Thomas J. Wuori (P41096)
Blake K. Ringsmuth (P44013)
Attorneys for Plaintiff

11

## JURY DEMAND

Plaintiff THERESA CASSELLA, by and through her attorneys, RINGSMUTHWUORI PLLC, demands a trial by jury in the above-captioned matter.

Dated: April 5, 2021

**RINGSMUTHWUORI, PLLC**

By:_____
Thomas J. Wuori (P41096)
Blake K. Ringsmuth (P44013)
Attorneys for Plaintiff